UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CONTRARIAN EMERGING MARKETS, L.P., GMO EMERGING COUNTRY DEBT FUND, GMO EMERGING COUNTRY DEBT INVESTMENT FUND PLC, and GMO EMERGING COUNTRY DEBT (UCITS) FUND, Individually and On Behalf of All Others Similarly Situated,

        Plaintiffs,

-against-

THE REPUBLIC OF ECUADOR,

        Defendant.

20 Civ. 5890

---

### DECLARATION OF MICHAEL E. GINNINGS IN SUPPORT OF APPLICATION FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER

MICHAEL E. GINNINGS, pursuant to 28 U.S.C. § 1746 declares under penalty of perjury as follows:

1. I am over the age of 18 years old, and reside in Rye, New York. I serve as the Senior Vice President of Contrarian Capital Management, LLC, which manages and advises Contrarian Emerging Markets, L.P. ("Contrarian" or "Plaintiff"). I submit this declaration in support of Plaintiffs' Motion for Preliminary Injunction and Temporary Restraining Order. I have personal knowledge of the facts set forth in this declaration and am competent to testify to such facts if called as a witness.

2. In my role as Senior Vice President, I have a variety of responsibilities, which include but are not limited to, sourcing, analyzing and executing investments in debt securities

globally, including sovereign investment opportunities on behalf of accounts which Contrarian Capital Management, LLC manages and advises, including Contrarian.

3. In or about September of 2018, Contrarian first contemplated an investment in and purchase of "Aggregated Eligible Bonds" and the "2024 Bonds" (collectively, the Eligible Bonds"), issued by the Republic of Ecuador.

4. Over the course of 2019 and 2020 Contrarian purchased hundreds of millions of dollars of Aggregated Eligible Bonds and 2024 Bonds issued by the Republic of Ecuador, via execution of certain Bond Indentures. I am familiar with the terms and conditions of the indenture agreements in all material aspects.

5. The purchase of the bonds was contemplated by Contrarian in light of, among other things, the contractual protections provided for investors, including the "no less favorable" provision in Section 7.3 of the Indenture for the 2024 Bonds and included in the Indenture for the Aggregated Eligible Bonds, which signaled to Contrarian that the bonds were a sound investment that could not be modified in a disproportionate manner to the detriment of the existing bondholders. Specifically, the Indentures provided that any modified notes offered by the Republic would be "no less favorable than the new debt instrument issued" in the exchange.

6. On July 20, 2020, the Republic of Ecuador (the "Republic") issued a press release and a so-called "Invitation Memorandum" announcing a coercive, unlawful, and unconscionable Consent Solicitation and Invitation to Exchange Eligible Bonds for New Securities of the Republic of Ecuador (the "Solicitation and Exchange"). As described below, if not enjoined, the Solicitation and Exchange will cause Contrarian to suffer immediate and irreparable harm. Therefore, there is great urgency regarding this matter.

7. A true and correct copy of the Invitation Memorandum, dated July 20, 2020, is attached hereto as **Exhibit A.**

8. A true and correct copy of the Public Statement made by the Republic, dated July 20, 2020 is attached hereto as **Exhibit B.**

9. A true and correct copy of the Public Statement made by the Republic, dated July 27, 2020 is attached hereto as **Exhibit C.**

10. As demonstrated by the plain language of the Invitation Memorandum, the Solicitation and Exchange seeks to strip Contrarian and other bondholders similarly situated of all rights owed to them under the Indentures, and places Contrarian and other bondholders similarly situated in a highly disadvantaged position relative to the tendering holders. Specifically, the Solicitation and Exchange contemplates a recovery of only 91.13 cents on the dollar in bonds, which are likely worth significantly less than face value with longer maturities and lower interest rates than the existing debt, and—if the exchange is completed—will result in the *"irrevocable forfeiture"* of all accrued and unpaid cash interest.

11. As a holder of hundreds of millions of dollars of bonds, if Contrarian chooses not to consent to the exchange, the transaction will result in an immediate financial loss which the Republic of Ecuador has affirmed is likely unrecoverable, as well as a severely subordinated position relative to the rights of the tendering bondholders.

12. Thus, the Solicitation and Exchange forces non-tendering bondholders into a subordinated position to the tendering bondholders, in direct violation of the plain language of the No Less Favorable Treatment clause and the other investor protections afforded under the Indentures.

13. The Solicitation and Exchange proposes a variety of other provisions that are extremely detrimental to Contrarian and other bondholders, including reduction of the threshold needed to give effect to a Non-Reserved Matter Modification under applicable indentures; elimination of Section 7.4 of the Indenture for the 2024 Bonds and Section 7.6 of the Indenture for the Aggregated Eligible Bonds, which provides for the prohibition of reopening and new issuance of notes; exclusion from the events of default cross defaults arising from the entering or issuance of judgments and arbitral awards relating to (1) any Eligible Bonds that are not modified by the Proposed Modifications, (2) any Modified Eligible Bonds, (3) any New Securities, (4) the 7.25% Social Housing Notes due 2035 (the "Social Housing Notes") issued by the Republic, and (5) the 4.625% Notes due 2021 ("PAM Notes") issued by La Empresa Pública de Exploración, and; elimination of the requirement that events of default (other than the non-payment of principal that became due solely as a result of such acceleration) have been cured, waived by the holders of not less than a majority of the principal amount of the outstanding notes or remedied.

14. All of the provisions referenced above were contemplated by Contrarian upon execution of the bonds, and if the potential for elimination and/or modification of any and all of the above had been disclosed to Contrarian at such time, it would not have entered into the agreement.

15. Worse still, the Invitation Memorandum clearly sets forth that the Republic is on the brink of insolvency, and is suffering an "urgent and sizable balance of payment needs" which is likely to result in the bonds "enter[ing] into default" and "remain[ing] in default indefinitely."

16. Given the Republic's history of fiscal insolvency and pattern of shirking its responsibility to creditors, combined with its current perilous financial state, it is unlikely that

Contrarian will ever be made whole in connection with the losses certain to result from the Solicitation and Exchange.

17. If the Solicitation and Exchange is not enjoined, Contrarian will have no choice but to cave to the Republic's coercive demands and tender its hundreds of millions of Eligible Bonds of under duress by the July 31, 2020 deadline, in order to avoid the significant financial consequences of failing to tender in a timely fashion. Having received approximately ten days-notice of the Solicitation and Exchange, Contrarian was left without recourse to challenge the notice provisions outlined in the Invitation Memorandum or to otherwise meaningfully engage in a negotiation and/or dispute resolution process to challenge the fairness and legality of the Solicitation and Exchange at issue.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 29 day of July 2020 in Greenwich, Connecticut.

Michael E. Ginnings
Senior Vice President
Contrarian Capital Management, LLC