

Hogan Lovells US LLP
390 Madison Avenue
New York, NY 10017
T  +1 212 918 3000
F  +1 212 918 3100
www.hoganlovells.com

July 30, 2020

**By Electronic Mail & ECF**

The Honorable Valerie E. Caproni
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, NY 10007

**Re:    Contrarian Emerging Markets LP v. Republic of Ecuador, 20-cv-05890**

Dear Judge Caproni:

We represent Defendant, the Republic of Ecuador (the "Republic"), in the above matter. We have received copies of the complaint, along with the proposed Order to Show Cause for a Preliminary Injunction hearing, including temporary restraining order, and related pleadings. We have received notice of the telephonic hearing scheduled for today at 10 a.m., and write to advise the Court that the Republic opposes the requested relief.

This case involves a Consent Solicitation that is a critical part of an effort by the Republic to restructure its debt in the face of the catastrophic financial effects of COVID 19 and historically low oil prices on a fragile economy. Without a restructuring, the Republic will default on its debt, causing a cascade of financial, social, and political problems that will negatively affect Ecuadorians for many years. The pending Consent Solicitation is based on Collective Action Clauses in the relevant indentures that allow a restructuring to proceed if a supermajority of bondholders consent to modify the bonds even absent the consent of minority bondholders. The Collective Action Clauses permit any provision of the indentures to be modified by their applicable thresholds. The proposed restructuring is the result of an agreement in principle reached with representatives of the majority of Ecuador's bondholders, negotiated in good faith. While the Plaintiffs may not support the restructuring now, the fact remains that they purchased bonds with Collective Action Clauses and agreed in entering the contract that a supermajority could agree to a restructuring of all bonds without the approval of every bondholder. There is nothing untoward in such a process, and it is the only way a sovereign, which cannot file for bankruptcy protection, can effectively restructure unsustainable debt. *See NML Capital, Ltd. v. Republic of Argentina*, 699 F.3d 246, 264 (2012); *NML Capital, Ltd. v. Republic of Argentina*, 727 F.3d 230, 247 (2013).

Hogan Lovells US LLP is a limited liability partnership registered in the District of Columbia. "Hogan Lovells" is an international legal practice that includes Hogan Lovells US LLP and Hogan Lovells International LLP, with offices in: Alicante Amsterdam Baltimore Beijing Birmingham Boston Brussels Colorado Springs Denver Dubai Dusseldorf Frankfurt Hamburg Hanoi Ho Chi Minh City Hong Kong Houston Johannesburg London Los Angeles Luxembourg Madrid Mexico City Miami Milan Minneapolis Monterrey Moscow Munich New York Northern Virginia Paris Perth Philadelphia Rome San Francisco São Paulo Shanghai Silicon Valley Singapore Sydney Tokyo Warsaw Washington, D.C.  Associated Offices: Budapest Jakarta Riyadh Shanghai FTZ Ulaanbaatar Zagreb.  Business Service Centers: Johannesburg Louisville. Legal Services Center:  Berlin.  For more information see www.hoganlovells.com

Although we have not yet had an opportunity to review the pleadings in detail, we note that based on the review we have been able to make so far we have identified several fundamental flaws in plaintiff's position. Those issues include:

**First,** each of the Indentures at issue requires any disputes to be litigated in arbitration before the London Court of Arbitration in London, England. Specifically, the indentures provide:

> "Any dispute, controversy or claim of any nature arising out of, relating to or having any connection with this Indenture, including any dispute as to the existence, validity, interpretation, performance, breach, termination or consequences of the nullity of this Indenture (a "Dispute"), where the Republic is either a party, claimant, respondent or otherwise is necessary thereto, shall not be referred to a court of any jurisdiction and shall instead be referred to and finally resolved by arbitration under the Rules of the LCIA. . . ."

The claim asserted in the complaint – as confirmed by plaintiffs' arguments in their motion papers, which repeatedly argue that terms of the Consent Solicitation violate their purported rights under the very Indentures containing these arbitration clauses – is plainly subject to arbitration as the exclusive means for resolution of the merits of this dispute.

**Second,** any claim in this Court against the Republic is barred by sovereign immunity. In each applicable indenture, the Republic waived sovereign immunity only for (1) arbitration claims, (2) enforcement of arbitration awards; (3) proceedings under the "supervisory authority" of the English courts related in relation to an arbitration proceeding; and (4) litigation in the courts of Ecuador. The Republic did not waive, and thus retains, sovereign immunity for purposes of the present action, and plaintiffs fail to plead any basis for jurisdiction over the Republic under the Foreign Sovereign Immunities Act, 28 U.S.C. Section 1602. We respectfully submit that this case must be dismissed on this ground alone.

**Third,** even if there were jurisdiction and a waiver of sovereign immunity, bondholders such as Plaintiffs are expressly barred by the indentures from filing any lawsuit against the Republic without first requesting in writing that the Trustee bring the claim. Section 4.5 of the Indenture provides that, except at maturity (which has not occurred),

> no Holder shall have any right by virtue of or by availing itself of any provision of this Indenture or of an Series of Notes to institute any suit, action or proceeding in equity or at law upon or under or with respect to this Indenture. . . unless . . . Such Holder previously shall have given to the Trustee written notice of a default and of the continuance thereof with respect to such Series of Notes; the Holders of not less than 25% in aggregate principal amount of such Series of Notes then Outstanding shall have made specific written request to the Trustee to institute

> arbitral proceedings. . . [and] the Trustee for 60 days after its receipt of such notice, request and provision of indemnity or other security, shall have failed to institute such arbitral proceedings. . .

There is no allegation in the Complaint that Plaintiffs satisfied this requirement, and the case must be dismissed as a matter of law.

**Fourth,** although pled as a securities fraud claim, there is no allegation, much less proof, of any actionable misrepresentation.  The thrust of Plaintiffs' claim is that, in violation of the governing Indentures, the Consent Solicitation is "coercive" and fails to provide "no less favorable treatment" to the non-consenting bondholders.  But these are not misrepresentation claims; they at most express disagreement with the terms of the Consent Solicitation, which were accurately disclosed in the Information Memorandum itself.  Plaintiffs try to sidestep this by alleging misrepresentations in a press release issued by the Republic in response to one issued by Plaintiff, in which the Republic stated that the process was "not coercive", that it followed principles of inter-creditor equity, and that it is consistent with the terms of the indentures.  These statements are, at most, generic statements (responding to Plaintiff's own puffery) and opinions concerning legal compliance that are plainly not actionable under clear Second Circuit precedent.  *See, e.g. Singh v. Cigna Corp.*, 918 F.3d 57, 64 (2d Cir. 2019).  Plaintiffs' claims also fail under the uniform case law in this Circuit that a company has no duty to accuse itself of wrongdoing or cast itself in a negative light.  *See, e.g. City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 184 (2d Cir. 2014).  Moreover, the bonds are traded on the Luxembourg exchange, and Plaintiffs have failed to plead facts demonstrating that the U.S. securities laws are applicable, much less that those laws have been violated.  *Id.* at 181.

**Fifth,** and perhaps most importantly, there is no proof by Plaintiffs that they face any risk of imminent, irreparable injury, or any injury at all caused by the alleged misstatements.  If the Plaintiffs are correct that the Consent Solicitation terms violate the indenture (which we vigorously dispute), they have an adequate and available remedy in damages.  Their claim that they failed to receive "no less favorable treatment" is a classic contract claim and the damages would be readily ascertainable.  Their claim that they will be "forced to tender" is not credible on its face.  Each bondholder makes a voluntary decision whether to tender, including the Plaintiffs, which are distressed debt specialists and/or sophisticated emerging market investors.  If the Plaintiffs are concerned about collectability of any judgment, their remedy is to seek security from the arbitral tribunal, not an injunction.

In contrast to the absence of irreparable injury to the Plaintiffs, the consequences to the Republic and all of its supporting creditors of an injunction delaying the pending consent solicitation are severe and immediate.  In this regard, we note that Plaintiffs waited to bring this action until three days before the Consent Solicitation July 31 date set as the close of the transaction.  Plaintiffs have long been aware of the restructuring – in April,

holders agreed to defer interest payments on the bonds at issue, and the term sheet for the restructuring was published on July 6.  The Republic has obtained a waiver of default of payment of interest on the bonds that is effective through August 10.  Currently, the Consent Solicitation has the support of a majority of bondholders, including the Ad Hoc Group which holds 53% of the bonds.  If the Consent Solicitation is delayed beyond that date, the Republic will be in default of not only the $17.4 billion of bonds at issue here, but also would be in cross-default of more than $5 billion additional debt to banks and other organizations.  A broad default could well prevent the Republic from being able to obtain financing at all, crippling its economy.  Thus, any balance of equities weighs strongly against issuing the extraordinary injunctive relief sought by Plaintiffs here.

We are prepared to discuss these matters, and to respond to any questions the Court may have.


Respectfully Submitted,

Dennis H. Tracey, III

Partner
dennis.tracey@hoganlovells.com
D +1 212-918-3524